May it please the court my name is David Corey I'm appearing on behalf of the appellant Dennis Wilcox in this case I'd like to reserve two minutes for rebuttal if I could first of all I'd like to comment if I could to the your honors I know you've had a chance to look at the briefs and I think your first thoughts might have been who is this attorney is he crazy and the reason you might think that is I've had the distinction or lack thereof of having had two US District Court judges tell me and my client you must exhaust you must complete the administrative proceeding staying the case and proceeding down the roads of the administrative proceeding before we're going to do anything with your case and your thought process counsel that the younger issue the the stay issue would appear potentially to be moot at this point because the process for which the case was held is now done so if you were to win on that case on that issue it wouldn't change anything well I think that's my point so what what is what is your response to the additional point that there is claim preclusion because of the state administrative agency's decision that was not appealed by your client to the state courts my response is that in essence what we've looked at is we've taken a position which this court may or may not want to to consider as being reasonable and appropriate is that we never had to go there to start with because the nature of the facts of this case just as a brief summary what happened in this case was an upon the sole issue of whether or not dr. Wilcox had completed his proctoring in the process of that issue being addressed by the administrative agency the defendants raised the ante by then charging that dr. Wilcox was not competent they had a whole bunch of cases he mishandled referring them to the medical board the medical board found in Wilcox's favor but the proceeding continued in the meantime at the same time state medical board found that he was competent they did yes and then from there did it go why did it end up going back to the hospital because it never stopped because under the hospital's own procedures they don't care what happens before the medical board they made the complaints we went to the medical board but in the meantime they continued their procedures and the distinction which is very interesting in this case is we didn't file suit until the defendants in the case literally eliminated dr. Wilcox from the schedule at that point time he had no practice whatever happened administratively if you look at our complaint when they eliminated him from the schedule had he already moved beyond the residency bounds he had not he was still there he was still practicing in fact he wrote him a letter and said I have to vacate my practice the letter was sent in September they changed the schedule in August we then filed our lawsuit the following March our contention was we didn't need to exhaust because we have a whole new set of facts well but now you're faced with the fact that the administrative proceeding found against dr. Wilcox correct we are except the issue there is what did they find they find that he they found that he voluntarily abandoned his practice privileges there but they made no findings on the issue of his constitutional tort well he didn't even raise it your honor it was discussed during the proceeding that he raised these claims there which is why I'm wondering whether in fact he did exhaust because he did raise there I mean you've got an alternative argument well your honor if I could what he said at the conclusion of one of the hearings early on in the proceeding involving his proctoring issue was the panel asking well dr. Wilcox is there a reason why you know can you explain why you believe that these adverse actions are being taken Wilcox commented he said well most of the people here went to foreign universities I happen to be one of the few white doctors here that may have something to do with it later on when Wilcox resigned actually he resigned from the Board of the Governors of the his position was that he believed he was a whistleblower and that was all after the fact so in essence what happened as far as the adjudication before the joint the JRC which is the entity it was a default proceeding now well he was a default proceeding by his choice he had the opportunity and that's you know I I'm sympathetic to your argument insofar as it deals with issue preclusion but actually have to have had a particular fact found to have claim preclusion where there's an opportunity to litigate your issues and you don't take full advantage of it so that's my concern with your argument I recognize that there may not have been a finding on every single thing but why wouldn't claim preclusion apply and and I think the court has is well-founded in having that concern which is really the reason I wanted to come and talk to you about what I believe the core of the case is at this point I'm willing to suggest that the one of the problems that we have just through the nature of both my case the underlying cases we started administrative procedure things change which at least from our viewpoint meant the administrative remedies became meaningless but also during the course of this case we had a change in very important California state law the Fallon versus Sutter Hospital case kicked in and here's what my suggestion is to the court I respectfully suggest to the court that based upon the fact that our pleading set forth a constitutional tort 42s USC 1983 First Amendment claim and a state law claim for interference with contract which was your honors that's all we had at that time those are the only two viable claims we could make at that time on his behalf to see court review the right now the interference with contract claim in the facts that the whistleblower statute addresses so in essence even if the court finds that we have lost our First Amendment claims because of preclusion I respectfully suggest that because of the change in the California law or clarification of the whistleblower statute the appropriate step for this case would be to remand it to the district court to allow us to amend our complaint if we're able to do so to persuade the judge there that we're entitled to pursue those claims because the timing of your filing with the filing of the complaint and the decision about filing under the whistleblower statute the the filing of the complaint was on March I believe 8th of 2013 Phelan was decided finally by the California Supreme Court on February 20th 2014 and the problem was there was a little short window when I actually cited it to the district court but by the time my brief was filed petition had been granted to the California Supreme Court all of a sudden it was no longer good law so when we started this case the only tools I had available as a seasoned lawyer were First Amendment claims and the claims having to do with the interference with contract I didn't have the whistleblower available so I could have made an argument it should have been available as soon as it was made available to us was after the appeal was pending I'd like to save my last two minutes if I could you certainly may thank you good morning may it please the court my name is Shelley Carter of DeCaro Coppo and Popke and I have the privilege of representing High Desert Medical Center and 10 individual defendants the former CEO eight members of the leadership of medical executive committee which is the leadership of the medical staff of the hospital and another physician the issue before this court is not exhaustion the issue before this court is preclusion and there are very distinct differences I'd also like to say that the parties have agreed that in fact this standard of review is de novo and the question before the court is evaluating it using the three factors enunciated in Utah construction question is whether or not the Judicial Review Committee acted in a judicial capacity resolve the disputed issues properly before it and whether the parties had an opportunity to litigate and it's clear that the JRC was acting in a judicial capacity peer review is a mandated surrogate structure of the respond it seems to be part of his contention is that this administrative review was was meaningless because he's a whistleblower well you know there's some animosity towards him and it was so the whole thing was meaningless the the hospital initiates the proceeding peer review is something that is incorporated in the overall licensure of physicians under the state and the hospital initiated those disciplinary proceedings it was Dr. Wilcox's choice to respond and request a hearing he did not go to federal court and file a federal lawsuit in 2009 when the proceedings when the notice of charges came out had he felt that he was suffering a constitutional injury at that point he could have filed maybe a federal lawsuit at that time he could have asked the is the Joint Review Commission made up of only people from his own hospital or is it more broadly based a joint review committee is a joint review committee is constituted under both California state law and the bylaws of the hospital there's a panel of physicians who are appointed to hear the case there's a hearing officer who is typically an attorney but the Judicial Review Committee the finders of fact are physicians they are they all from his hospital they are from the medical staff generally there's provisions in the bylaws that they can be found outside of the hospital if they can't fulfill a certain role and Dr. Wilcox was given the opportunity to voir dire had he had challenges to the particular independent fact finders that were going to hear the case he could have raised those on voir dire and they could have maybe found physicians outside it has been done. So you agree that before the federal court should give preclusive effect to the decision of the administrative review board the hospital review board that the Utah construction factors must be met the three factors I do I do believe though so the I'm having a problem with the second factor that the Judicial Review Committee resolved disputed issues of fact properly before it I don't see where it resolved his made any findings with respect to his First Amendment claims or his claims of retaliation even though they were discussed by the review committee there's no findings they the conclusion was that he had abandoned the proceedings and therefore they would be findings that are supposed to be given preclusive effect well they not only said and discussed the fact that he had raised them that he had an opportunity to litigate those that the JRC decision said that they were available and would have heard any defenses that he had including the constitutional injuries but he voluntarily abandoned them we have the decision so there was no decision on the merits of this of his claims there was he just he decided he didn't want to practice at the hospital anymore so he moved out of the area and he abandoned the proceedings but pursuant to the bylaws of the hospital that's the other part I have a problem with because that is not by that part of your argument isn't pursuant to the state law that's pursuant to the bylaws of the hospital which is the very entity against which he has a claim in a fact in it in fact however your judge the state law requires hospitals to incorporate bylaws and that the parties have to follow those bylaws and one provision of the bylaws says that if you voluntarily abandon the proceedings the it's deemed to be an acceptance of the decision at of the decision and of the charges in the notice of charges so in fact here we have a physician who is now deemed to have exercised incredibly poor medical judgment and overall lack of fundamental quality of medical care and every board finding to the contrary there's a different standard before the Medical Board of California as to what they look into the hospitals are required when certain things go into effect when there's any restriction on practice privileges when a physician is required to file an 805 report to the Medical Board of California and to the National Practitioner Data Bank what the Medical Board does with that thereafter is under different standards and under a different proceeding so I take it your position is that the agency did resolve the disputed issues of fact it did so not by making independent findings but by resort to the to the fact that the deemed an acceptance of the facts as charged so it's a resolution but it's a resolution for a particular reason my concern though is on the third factor whether there was an adequate opportunity to litigate this whistleblower claim that is has been discussed by opposing counsel under the 2014 fallen case is that something that in your view there was an opportunity to litigate at time even before the issuance of that decision absolutely first of all the failing case has been a little bit misinterpreted by counsel it is only a case talking about one particular statute health and safety code section 1278.5 which has been on the books long before this lawsuit was filed he could have raised a 1278.5 challenge 1278.5 has existed continued to exist and the Court of Appeal decision actually allowed dr. Phelan to proceed and that was affirmed by the California Supreme Court for four years now there's been no reason why dr. Wilcox couldn't have sought to amend his complaint to include that sort of cause of action so you're saying the cause of action existed at the time the administrative proceedings were ongoing he just simply didn't take advantage of it that's your position for the cause of action was available even in March of 2011 when he filed this lawsuit and he didn't raise it and the Phelan court affirmed the one whistleblower cause of action but there are two other whistleblower causes of action that it said that the court did have to that the plaintiff did have to exhaust so if we're going to talk about exhaustion 1278.5 the Phelan decision is very very limited to the particular language of the particular statute but we're not dealing with exhaustion here and the question is could he have filed a 1278.5 he probably could have but he chose not to for four years and sending it back now would not be the appropriate resolution and the only other thing I really wanted to point out on the issues is that the 1983 claims although not subject to exhaustion are subject to preclusion and he did have the opportunity to raise his defenses he could have come into the judicial review committee and said it is not because my quality of medical care is deficient it is because you retaliated against me and in fact he did say in three or four times in the various proceedings we have testimony where he claimed that he was raising issues of quality of care and the board the judicial review committee when it made its decision after he abandoned the proceeding said we were there we would have listened to that we would have taken that into consideration and had he not been dissatisfied with that he had mandamus he could have gone to the state court he could have gone all the way to the retaliation discrimination claims thank you thank you counsel Mr. Corey you have two minutes for rebuttal number one is that if you look at the appellate's excerpts at pages 31 and 38 through 9 you will see that the bylaws of the hospital provide for purposes of the joint review committee's limited authority that the only findings they can make are limited to the physician's practice privileges period that's what it says that's all they can do and be in accord with their own with their own bylaws they can't do anything else now the second problem I have is counsel's argument about failure isn't that what they did they removed his privileges they did then that's but and that's what they're entitled to but there was no but your honor there was no findings about his constitutional claims there was no suggestion by the procedure that that was an open wide open thing that he could raise any claim he wanted to well but the decision of the joint review committee says specifically that earlier in the process he had raised those claims but by abandoning them he is deemed to have accepted the recommendation that his privileges be terminated so I mean he did with that but see the problem is he didn't I have to look at the record because in all due respect what he commented was that he because of his race wasn't about issues of his exercising of his criticism of the hospital the only thing of record pertaining to that your honor was way after the barn door was open and the animals were gone that's when he resigned from the hospital and wrote the board of the hospital I'm resigning the reasons are as set forth in my litigation that's not an issue that was presented to the JRC the JRC wouldn't even look at that document it's actually sent to the board as an explanation as to why he was resigning he was an elected member of the board second part of it though just quickly if I could the concept that we had 1285 or 1278.5 claims available to us in March of 2011 is just false because the case law when you look at Fallon the case law at that time was Nesson versus northern Inyo County it said we didn't specifically we did not or we would have raised him because we determined those are the only two we could raise was interference with contact constitutional tort now the big question is why didn't we go ahead and litigate all this anyway make a record go to state court we are suing the people that are going to be the fact finders all it would have resulted if we had perceived and followed their pathway is we would have got a whole bunch of facts you don't know that that's purely speculative it is but how do I as an attorney expose my client his license his career his ability to ever practice at another hospital to a massive group of findings of a pure group of physicians who we contend interfered with his first amendment constitutional rights his whistleblower rights and let them make these findings which will poison his career forever I'm not saying legally that is necessarily a defense I can raise before you but I want you to know we gave careful thought of this we didn't go willy-nilly and say we're going to put this case on appeal respectfully suggest because I got just a few seconds I know you're minus your mind oh I'm sorry thank you for hearing me this morning thank you very much the case just started is submitted and we
judges: Mahan, Graber, Wardlaw